IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN KADERLY,<br>　　Petitioner | §<br>§<br>§ | |
| VS. | § | C.A. NO. C-07-225 |
| | § | |
| NATHANIEL QUARTERMAN<br>DIRECTOR, TEXAS DEPARTMENT<br>OF CRIMINAL JUSTICE–<br>CORRECTIONAL INSTITUTIONS<br>DIVISION,<br>　　Respondent | §<br>§<br>§<br>§<br>§<br>§ | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Stevenson Unit in Cuero, Texas. The actions about which he complains occurred in Nueces County, Texas. Proceeding *pro se,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §§ 2241 and 2254 on May 10, 2007 (D.E. 1).[1] Petitioner makes a number of claims relating to his 2003 conviction for burglary of a habitation with intent to commit theft. Respondent filed a motion for summary judgment on August 24, 2007 arguing that petitioner's case is time-barred (D.E. 15). Petitioner filed a response to the motion on October 11, 2007 (D.E. 26).

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Petitioner executed his petition on May 10, 2007. In order to give him the benefit of the doubt under the "mailbox rule" of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988), it is assumed that he placed his petition in the prison mail system on the same day it was executed.

## BACKGROUND

A.  **Factual Background**

On March 4, 2002 Mark Hayak, a friend of Gordon and Melissa Russell, was driving past the Russell's house at the corner of County Roads 51 and 22 in Nueces County, Texas, when he noticed a white pickup truck parked behind the house (4 SF 23-24).[2]  He did not recognize the truck so he pulled in behind it (4 SF 24-25).  He saw that a telephone cord was being used to tie the back door open and saw some old furniture and antiques in the back of the truck (4 SF 26).  He became suspicious that someone was robbing the house and went back to his truck to call the Russells (4 SF 27-28).

When Hayak returned to his truck he saw petitioner and a woman, later identified as Alison Carlisle, coming out of the house and Hayak asked them what they were doing.  They told him that the owners of the house had hired them to clean up trash, but neither of them could name the owners (4 SF 28-31).  Hayak called Melissa Russell and learned that the Russells had not hired anyone to clean up the house.  Hayak noticed the white truck leaving the driveway at about the same time a friend of his, Bernard Mokry, was driving up (4 SF 32).  Hayak and Mokry, both in their own trucks, were able to force the white truck to a stop while Hayak called the police (4 SF 43-49).  Petitioner, who was a passenger in the white truck, exited the truck and talked to both Hayak and Mokry.  Hayak told him that he had called the police and said for petitioner to go back to his truck (4 SF 44-45).  Petitioner returned to the truck and the truck pulled out and started to drive off (4 SF 45).

---

[2]"SF" refers to the statement of facts taken at petitioner's trial.

Hayak and Mokry again managed to force the white truck to a stop and petitioner exited the truck and suggested to Hayak that he and Carlisle would return the items to the house if Hayak and Mokry would let them go. Hayak declined and petitioner left the road and started walking toward Corpus Christi (4 SF 45-47). Petitioner was arrested a short time later (4 SF 47). The items in the back of the pick-up truck were identified as belonging to the Russells (4 SF 85, 94). Other property taken from the house was later found at Carlisle's house (4 SF 124). James Brown testified that he bought ammunition, later identified as belonging to the Russells, from petitioner (4 SF 104-107; 5 SF 19-20). Other testimony indicated that petitioner was living with Paul Hall at the time of the burglary and that stolen items were found at Hall's house (4 SF 131; 5 SF 20).

The house was entered by force and there were several points of entry (4 SF 116). Melissa Russell testified that the house belonged to her and her husband and petitioner did not have permission to enter the house (5 SF 47-48).

**B. Procedural Background**

On June 18, 2003, a jury in the 117th District Court of Nueces County, Texas, found petitioner guilty of burglary of a habitation. Petitioner pleaded true to two enhancement paragraphs and the trial court sentenced him to serve 40 years in TDCJ-CID. Ex Parte Kaderly, App. No. WR-30,528-03 at 163.[3] Petitioner filed a direct appeal and his conviction was affirmed on August 5, 2004. Kaderly v. State, No. 13-03-00440-CR (Tex.

---

[3]Petitioner's cause of action was inadvertently filed as two actions, Cause Nos. 2:07cv225 and 2:07cv233. The cases were later consolidated under 2:07cv225. (D.E. 10). However, the state court records are located in 2:07cv233 at D.E. 14.

App.–Corpus Christi, 2004, pet. ref'd).[4]  Petitioner filed a petition for discretionary review ("PDR") and it was refused on March 29, 2005.  Kaderly v. State, PDR No. 1452-04 (Tex.Crim.App. 2005).

According to the record, petitioner next filed an application for habeas corpus relief in state court on March 28, 2006.  Ex Parte Kaderly, App. No. WR-30,528-03 at 2.[5]  The Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing on May 24, 2006.  Id., at cover.  Petitioner filed a second state application for habeas corpus relief on March 26, 2007 and it was dismissed as a subsequent application on April 25, 2007.  Ex Parte Kaderly, App. No. WR-30,528-04 at 2, cover.  Petitioner filed this federal action on May 10, 2007.

Petitioner makes the following arguments:

(1) He was not allowed to observe the drawing of the names of prospective jurors from the jury wheel;

(2) The prosecutor commented on petitioner's decision not to testify in violation of petitioner's Sixth Amendment right not to testify;

(3) There was no evidence showing that petitioner entered the building where the burglary took place; no evidence that petitioner entered into an agreement with Alison

---

[4] Petitioner's counsel filed a brief asserting there was no basis for petitioner's appeal (See Anders v. California, 386 U.S. 738, 744 (1967)) and petitioner filed a *pro se* brief.  The 13th Court of Appeals found that petitioner's contentions were inadequately briefed and did not consider them.  Ex Parte Kaderly, App. No. WR-30,528-03 at 145-146.

[5] Petitioner had filed two earlier applications for writ of habeas corpus, Apps. No. WR-30,528-01 and -02, but they pertain to earlier convictions and are not relevant to this case.

Carlisle regarding the burglary and no evidence that petitioner ever possessed stolen property;

    (4) His trial attorney was ineffective for the following reasons:
        (a)  failing to respond to the court's request for a jury shuffle;
        (b)  failing to object to the victims remaining in the courtroom during jury voir dire;
        (c) failing to investigate petitioner's prior convictions which were used for enhancement purposes where one of his prior convictions was 26 years old;
        (d) failing to review a video which was played to arouse the sympathy of the jury;
        (e) failing to make an independent search for witnesses;
        (f) failing to call any witnesses or present a defense;

    (5) The prosecutor committed misconduct when she
        (a) allowed a witness to testify about petitioner's extraneous offenses;
        (b) questioned one law enforcement officer about actions of another law enforcement officer;
        (c) prosecuted petitioner even though she knew that other people committed the burglary and he was not involved;

    (6) He was denied compulsory process for obtaining witnesses;

    (7) The trial court violated petitioner's rights when she did not allow his attorney to ask questions during jury voir dire;

    (8) The testimony of witnesses Mark Hayak and James Brown was not credible;

    (9) The "law of parties" was not properly applied in his case;

    (10) His attorney and the prosecuting attorney conspired to commit an obstruction of justice by refusing to allow petitioner to call witnesses;

    (11) Hayak and Mokry made a false arrest;

    (12) Evidence used at trial was obtained as a result of an illegal search and seizure and

    (13) The enhancement of petitioner's sentence was fundamentally defective.

In his motion for summary judgment, respondent argues that petitioner's action is barred by the applicable statute of limitations. Petitioner concedes that his cause of action was filed late, but argues that he tried in a diligent manner to file his action in a timely fashion but was hindered by actions of the state and that he is entitled to equitable tolling. Respondent concedes that petitioner has exhausted his state court remedies.

## APPLICABLE LAW

### A. Statute of Limitations

Respondent seeks to dismiss petitioner's application for habeas corpus on the grounds that the application was filed outside the one-year limitation period set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244. Petitioner filed his current application for writ of habeas corpus on May 10, 2007 and so is subject to the ADEPA provisions. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Petitioner's conviction became final when the time for filing a petition for writ of certiorari expired, which was 90 days after the Court of Criminal Appeals denied review. SUP. CT. R. 13.1. In petitioner's case his conviction became final on June 27, 2005. He had one year from that date, or until June 26, 2006, to file his federal petition. 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998). Petitioner did not file his petition until May 10, 2007, almost a year after the limitations period expired. Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2). See also Coleman v. Johnson, 184 F.3d 398 (5th Cir. 1999) (petitioner entitled to equitable tolling from the time he filed his state habeas application until it was denied). According to the record, petitioner filed his state court habeas petition on March 28, 2006 and it was pending until May 24, 2006, a period of 56 days. Adding 56 days to the statute of limitations extended it to August 21, 2006. Because petitioner did not file his federal petition until May 10, 2007, it still was filed too late. Nor did petitioner's second state habeas action act to toll the statute of limitations because he did not file it until March 26, 2007, after the limitations period had expired.

Petitioner argues that he attempted to file his petition in a timely manner, but was kept from doing so by circumstances beyond his control. According to petitioner, on August 11, 2005 he gave the supervisor of the law library his properly addressed state writ application with sufficient postage to be mailed. On August 14, 2005 petitioner transferred to the Bird Unit and sent a notice of change of address to the clerk of the 117th District Court of Nueces County. On October 19, 2005 petitioner received a white card showing that his habeas corpus application had not been received or filed. He was advised to contact the Texas Court of Criminal Appeals for further information (D.E. 26, Ex. 4).

Petitioner wrote a letter to the Court of Criminal Appeals asking about the missing application and made a second inquiry to the Thirteenth Court of Appeals. In the meantime, petitioner had written a letter to the federal district court asking whether he had a case pending in federal court. On December 28, 2005 petitioner received a letter from the United States District Court informing him that he had no case pending, but that his letter would be furnished to the Chief Justice of the Thirteenth Court of Appeals (D.E. 26, Ex. 2). Petitioner also received notice on December 28, 2005 from the Thirteenth Court of Appeals that the court's records did not reflect that a habeas corpus action had been filed on his behalf (D.E. 26, p. 3, Ex. 5).

Petitioner had also complained to prison authorities that he was being denied access to the courts. On December 27, 2005 he received a reply from the Garza West facility telling him that the mail log showed that an item was sent by petitioner to the District Clerk of the 117th District Court at the Nueces County courthouse on August 11, 2005 (D.E. 26,

Ex. 1). Petitioner wrote to the federal court again on March 26, 2006 and received a letter dated April 7, 2006 telling him that the federal court did not have any control over how the state courts process habeas corpus applications (D.E. 26, Ex. 3). Petitioner filed his state writ application on March 28, 2006.

Petitioner argues that under the mailbox rule of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) and Spotville v. Cain, 149 F.3d 374, 376-378 (5th Cir. 1998), his state habeas action should be deemed filed as of the day he handed it to prison authorities. However, the Fifth Circuit has declined to extend the mailbox rule to the determination of filing dates for state habeas applications. Coleman, 184 F.3d at 402. "Instead, when a prisoner asserts that his ability to file a federal habeas petition has been affected by a state proceeding, we will examine the facts to determine whether the prisoner is entitled to equitable tolling under § 2244(d)(1)." Id. See also Howland v. Quarterman, 507 F.3d 840 (5th Cir. 2007)(Mailbox rule not applicable under Texas Rules of Civil Procedure when no filing deadline is involved). Petitioner cannot prevail on his argument that his state application was deemed filed as of August 11, 2005.

Petitioner also argues that he is entitled to equitable tolling of the statute of limitations. Equitable tolling is permissible only in "rare and exceptional" circumstances. Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. Excusable neglect does not support equitable tolling. Coleman, 184 F.3d at 402 (citations omitted). Because equitable

9

tolling is available only when the petitioner meets the high hurdle of showing that (1) extraordinary circumstances (2) beyond his control (3) made it impossible to file his petition on time, equitable tolling is inappropriate in most cases.  Henderson v. Johnson, 1 F.Supp.2d 650, 653 (N.D. Tex. 1998); Paige v. United States, 171 F.3d 559, 561 (8th Cir. 1999).  See also Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)(commenting that court can allow untimely petition to proceed under the doctrine of equitable tolling only in extraordinary circumstances).  A prisoner proceeding *pro se* is not a "rare and exceptional" circumstance because it is typical of those bringing § 2254 claims.  Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000).

In this case petitioner understandably assumed that his state court habeas action had been filed after he handed it over to prison authorities.  However, petitioner received unequivocal notice from the Thirteenth Court of Appeals on December 28, 2005 that his state application had *not* been received or filed (D.E. 26, Ex. 5 ).  At that point, he still had until June 26, 2006 to file his federal petition.  As discussed above, his first state court petition extended his deadline to file his federal petition by 56 days, making his federal deadline August 21, 2006.  The Court of Criminal Appeals denied his first habeas action on May 24, 2006.  He still had three almost three months in which to file his federal petition.  Under these circumstances petitioner is not entitled to equitable tolling of the statute of limitations.

**B.  Certificate of Appealability**

Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find

11

it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed for procedural reasons. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that petitioner's habeas corpus petition is time-barred.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment (D.E. 15) be granted and petitioner's cause of action for habeas corpus relief be dismissed as time-barred. It is further recommended that if petitioner seeks a COA, it be denied.

Respectfully submitted this 11th day of January, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996)(en banc).